UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AARON KELLY RIVNACK,

        Petitioner,

v.                                                                Case No. 2:14-cv-107
                                                                  HON. GORDON J. QUIST
CATHERINE BAUMAN,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Aaron Kelly Rivnack filed this petition for writ of habeas corpus challenging his jury conviction for first-degree home invasion (MCL § 750.110a(2)), felon in possession of a firearm (MCL § 750.224f), and two counts of possessing a firearm during the commission of a felony (felony-firearm) (MCL § 750.227b). Petitioner was sentenced to concurrent sentences of 18 to 75 years for the first-degree home invasion and felon in possession convictions, consecutive to two concurrent two-year sentences for the felony-firearm convictions. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

Petitioner alleges that:

I. Petitioner's right to due process was violated because the jury was not properly instructed on a critical element of the offense of first degree home invasion. Alternatively, counsel was ineffective for failing to object to the deficient instructions.

II. Trial counsel was ineffective for allowing the jury to be apprised of the Petitioner's prior criminal record, especially where the court had already excluded one conviction from the trial.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Id.*  A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  A federal habeas court may not find a state

adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner claims that his right to due process was violated because the jury was not properly instructed. In addition, Petitioner claims his counsel was ineffective for failing to object to the deficient instructions. The first part of Petitioner's claim is procedurally defaulted, as he waived his jury instructions claim by expressing satisfaction with the jury instructions at trial. When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501

U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

When a petitioner has procedurally defaulted in the state courts, the federal habeas court will only entertain the defaulted issue if the petitioner can show "cause" for the procedural default and "actual prejudice" as result of the alleged federal violation or can show actual innocence.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray*, 477 U.S. at 485; *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999); *Rust*, 17 F.3d at 160-61.  To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal.  *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  Petitioner has not attempted to explain his failure to raise the issue in his *pro per* application in his direct appeal to the Michigan Supreme Court or to explain his failure to file a timely application for leave to appeal the decision on his second motion for relief from judgment to the Michigan Supreme Court.

Factors that may establish cause include interference by officials, attorney error rising to the level of ineffective assistance of counsel, and a showing that the factual or legal basis for a claim was not reasonably available.  *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010) (citing *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (citing *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991) (quotations omitted)).  A claim may be sufficiently novel to excuse a default if, at the time of the default, the basis for the legal claim was not yet in existence.  *See Cvijetinovic v. Eberlin*, 617 F.3d 833, 837-38 (6th Cir. 2010) (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984), and *Engle v. Isaac*, 456 U.S. 107, 130-33 (1982)).  Where a petitioner fails to show cause, the court need not consider whether he has established prejudice.  *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).  Therefore, because Petitioner failed to establish "cause," his claim of a due process violation due to jury instructions is procedurally defaulted.

Concerning Petitioner's claim of ineffective assistance of counsel related to jury instructions, the Michigan Court of Appeals held:

[D]efendant also asserts on appeal that trial counsel rendered ineffective assistance by failing to bring to the trial court's attention that it omitted an element of first-degree home invasion.

Our Supreme Court has held that the Michigan Constitution guarantees a defendant the same right to counsel as the United States Constitution, and Michigan has adopted the two-part standard for evaluating the effectiveness of counsel set out by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668; 104 S Ct 2052; 80 L.Ed.2d 674 (1984). *People v. Pickens*, 446 Mich. 298, 318; 521 NW2d 797 (1994). First, the defendant must show that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Second, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v. Grant*, 470 Mich. 477, 484; 684 NW2d 686 (2004). A trial court's factual findings are reviewed for clear error, while constitutional law considerations are reviewed de novo. *Id*. To establish a claim of ineffective assistance of counsel, a defendant bears the heavy burden of showing that counsel's performance was deficient and that he was prejudiced by the deficiency. *People v. Carbin*, 463 Mich. 590, 600; 623 NW2d 884 (2001). "[A] defendant must show that counsel's performance was below an objective standard of reasonableness under prevailing professional norms and there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v. Effinger*, 212 Mich. App 67, 69; 536 NW2d 809 (1995).

This Court's review is limited to the facts of the record because defendant did not move for a new trial or an evidentiary hearing before the trial court. *People v. Wilson*, 242 Mich. App 350, 354; 619 NW2d 413 (2000).

After closing arguments, the jury was instructed on the elements of first-degree home invasion:

Under Count One, the Defendant is charged with Home Invasion in the First Degree. To prove this charge, the Prosecutor must prove each of the following elements beyond a reasonable doubt.

First, that the Defendant broke into a dwelling. It does not matter whether anything was actually broke. However, some force must

- 6 -

have been used. Opening a door, raising a window, taking off a screen, are all examples of enough force to count as a breaking. Entering a dwelling through an already open door or window without using any force does not count as breaking.

Second, that the Defendant entered the dwelling. It does not matter whether the Defendant got his entire body inside. If the Defendant put any part of his body into the dwelling after the breaking, that is enough to count as an entry.

Third, that when the Defendant entered, was present in, or was leaving the dwelling, he committed the offense of Larceny.

The definition of Larceny is that Defendant took someone else's property, that the property was taken without consent, that there was some movement of the property. It does not matter whether the Defendant actually kept the property or whether the property was taken off the premises.

Fourth, that at the time the property was taken, the Defendant intended to permanently deprive the owner of the property.

If you determine that the Defendant had possession of the property in question here and that this property was recently stolen, you may infer that the Defendant committed the theft. However, you do not have to make this inference. The term "recently stolen property" has no fixed meaning. You should think about what kind of property it was, how hard it was to transfer, and all of the other circumstances in deciding whether the time between the alleged theft and the Defendant's alleged possession of the property was so short that no one else had time to possess it.

You also may consider under Count One the lesser offense of Home Invasion in the Second Degree. To prove the lesser offense, the Prosecutor must have proven each of the following elements beyond a reasonable doubt.

First, that the Defendant broke into a dwelling. It does not matter whether anything was actually broken; however, some force must have been used. Opening a door, raising a window, taking off a screen, are all examples of enough force to count as a breaking.

Second, that the Defendant entered the dwelling. It does not matter whether the Defendant got his entire body inside. If the Defendant

put any part of his body into the dwelling after the breaking, this is enough to count as an entry.

Third, that when the Defendant entered, was present in, or was leaving the dwelling, he committed the offense of Larceny. And again Larceny I gave the definition just a moment ago.

It appears from the record as transcribed that the trial court failed to instruct the jury on an element of the offense of first-degree home invasion by omitting in its instruction that the jury must find that defendant possessed a firearm or that someone was lawfully present in the dwelling at the time the offense occurred. However, it is unknown if the written instructions given to the jury correctly described this element as a copy of the written instructions is not available in the record. We can glean from the record that a note from the jury suggests that the written instructions provided to the jury did correctly describe this element. The note asks, "I need further explanation of #4 of Home Invasion 1st degree. Possessed a gun. Does that mean *any* time during the B & E?" (Emphasis in original). See CJI2d 25.2a(5) (indicating that the fourth element of the crime involves finding either that another person was present in the home or that the defendant "was armed with a dangerous weapon"). The query specifically links possession of a weapon to the charge of first-degree home invasion. Hence, there is direct evidence that the jury was aware that they must find that defendant possessed a weapon in order to find him guilty of first-degree home invasion.

However, this finding does not excuse trial counsel's failure to object to the jury instructions on this charge as read by the trial court. We therefore find that trial counsel's failure to object to the jury instructions as read by the trial court on the charge of first-degree home invasion fell below an objective standard of reasonableness. Having found that defendant has established the first prong set forth in *Strickland*, we turn to the issue of whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The instructions given to a jury in a criminal trial "must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence. *People v. McGhee*, 268 Mich. App 600, 606; 709 NW2d 595 (2005). "Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle

for determining guilt or innocence." *Neder v. United States*, 527 U.S. 1, 8; 119 S Ct 1827; 144 L.Ed.2d 35 (1999) (emphasis in original). "Even if somewhat imperfect, instructions do not create error if they fairly present the issues to be tried and sufficiently protect the defendant's rights." *People v. Waclawski*, 286 Mich. App 634, 678; 780 NW2d 321 (2009).

Defendant's home invasion conviction was based on MCL 750.110a(2), which provides:

A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling.

The Prosecutor's theory of the case was that the defendant possessed a firearm during the home invasion. Defendant contends that the trial court's failure to instruct the jury that possession of a firearm in this case was necessary for a finding of guilt constituted reversible error. Following our examination of the record, we conclude that defendant cannot establish that there exists a reasonable probability that but for trial counsel's error, the result of the proceeding would have been different.

Review of the record leads us to conclude that the jury instructions, when read and considered as a whole, fairly presented the issues to be tried and sufficiently protected defendant's rights. *People v. Waclawski*, 286 Mich. App at 678. Here, the record reveals that the jury sent a note to the trial judge specifically asking: "I need further explanation of #4 of Home Invasion 1st degree. Possessed a gun. Does that mean *any* time during the B & E?" (Emphasis in original). Having found that this question directly corresponds to CJI2d 25.2a(5), we find that the jury was adequately instructed on the element of possession of a weapon, and that the jury specifically understood that they needed to find that defendant possessed a weapon in this case to find him guilty of first-degree home invasion.

Our conclusion that defendant's rights were not undermined is further supported by the jury finding defendant guilty of the felony-firearm charge. In order to make such a finding, the jury must also have found that defendant was armed during the home invasion. Therefore, we hold that defendant cannot establish that but for trial counsel's failure to object to the trial court's instructions as read to the jury on the charge of first-degree home invasion the result of this trial would have been different. Defendant has failed to establish the necessary prejudice for this Court to reverse his conviction on this charge. Hence, no relief is granted on this issue. *Carbin*, 463 Mich. At 600.

PageID.728-731

In the opinion of the undersigned, the decision of the Michigan Court of Appeals did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner next claims that his trial counsel was ineffective for allowing the jury to be appraised of his prior criminal record. To prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-96 (1984). Stated another way, this court is to decide whether petitioner's trial counsel's alleged failures were such egregious errors as to constitute ineffectiveness and whether the alleged failures were materially prejudicial. The Sixth Circuit has explained:

The question for reviewing courts is whether counsel's errors have likely undermined the reliability of, and confidence in, the result.

- 10 -

*Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc), cert. denied*, 113 S. Ct. 2969 (1993). Thus, the determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See id.*

*West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

The Michigan Court of Appeals held:

Defendant also asserts that trial counsel was ineffective because of his handling of defendant's 2002 breaking and entering with intent conviction, in violation of MCL 750.110.

\*\*\*

Having previously explained the proper law and standard of review for claims of ineffective assistance of counsel, we first turn to the issue of whether trial counsel's decision to specifically introduce defendant's 2002 conviction through defendant's testimony fell below an objective standard of reasonableness under prevailing professional norms.

\*\*\*

While the prosecution sets forth a reasonable argument as to why this Court should find trial counsel's decision to be one of trial strategy and therefore not second guess his intentions, such a finding negates that counsel could have just as easily stipulated to the prior conviction. *See, Old Chief v United States*, 519 U.S. 172, 174; 117 S. Ct. 644; 136 L. Ed. 2d 574 (1997). It is not apparent from our review of the record, specifically based on trial counsel's statement: "There's no real choice there because that is what the charge is," that trial counsel was aware of the ruling in *Old Chief*. It therefore becomes difficult for us to find that trial counsel's decision was based on trial

strategy, in part, because it appears from the record that trial counsel believed he had no choice but to have defendant testify about his prior conviction. While we find some merit to the arguments set forth by the prosecutor that trial counsel's decision was based on reasonable trial strategy, we conclude for purposes of our review, that trial counsel's performance on this issue fell below an objective standard of reasonableness under prevailing professional norms. *Effinger*, 212 Mich. App. At 69. Having found that defendant has met the first prong of *Strickland*, we turn to the issue of whether, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. We conclude, based on the amount and type of evidence presented in this trial that there was no reasonable probability that but for trial counsel's error the result of this trial would have been different.

The evidence presented at trial in this matter was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant committed the charged offenses. Testimony revealed that when Schilling initially arrived at his home he saw a blue car being driven and occupied solely by defendant's uncle, Donald Knowles. When asked what he was doing at Schilling's home, Knowles stated that "Aaron's here looking for your son Kyle." Schilling then noticed that his side door was open. Schilling then went into his house and discovered that another door was also opened and reported to the 911 operator that his pistol was missing. After leaving his home to find Knowles, and then returning to his home, Schilling saw Knowles and defendant at his house a second time. Schilling had contact with defendant who told him that he was looking for Schilling's son because he owed him money. Schilling then followed the car in which defendant was a passenger, from the time it left Schilling's home until the car was stopped by the police. Following a search of the car in which defendant was a passenger, a watch was discovered that was identified as belonging to Schilling's son.

Additionally, Schilling's trail camera revealed photographic evidence that depicted someone dressed in the same clothes as defendant going in and out of Schilling's home. One of the photographs showed the person with a latex glove on his hand while turning the doorknob. Another photographic image captured by the trail camera showed what appeared to be a gun belonging to Schilling in the pocket of the person entering the home. A search of the Schilling property found latex gloves similar to those worn by the individual depicted in the photo, discarded near a pond.

- 12 -

Our review leads us to conclude that the prosecution introduced overwhelming evidence of defendant's guilt. Coupled with the fact that the jury would have learned of defendant's prior conviction through stipulation, thus, even presuming that trial counsel's performance fell below an objective standard of reasonableness, defendant cannot demonstrate that but for trial counsel's errors, the result of the proceeding would have been different." *Stickland*, 466 U.S. at 694. Accordingly, defendant is not entitled to relief on this issue.

PageID.732-733

Petitioner failed to show that his trial counsel was constitutionally ineffective. In the opinion of the undersigned, the decisions of the Michigan Court of Appeals did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court

- 13 -

in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

Additionally, the undersigned recommends that the court deny Petitioner's application on procedural grounds of procedural default. Under *Slack*, 529 U.S. at 484, when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id.* The undersigned concludes that reasonable jurists could not debate that Petitioner's first claim is properly dismissed on the procedural grounds of procedural default. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: June 29, 2016                                     /s/ TIMOTHY P. GREELEY
                                                         TIMOTHY P. GREELEY
                                                         UNITED STATES MAGISTRATE JUDGE